UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

LARRY WORMAN,

        Plaintiff,

  v.

METLIFE GROUP, INC. and
DOES 1 through 10, inclusive,

        Defendants.
_____/

NO. CIV. S-06-2870 LKK EFB

O R D E R

The plaintiff, Larry Worman, has brought suit against his former employer, MetLife Group, Inc., alleging that he did not receive the full compensation he was owed at the time of his termination. The defendants have moved for summary judgment on all claims. The court resolves the motion on the papers and after oral argument.

## I. FACTS[1]

The plaintiff was hired in November 2003 as Vice President of Marketing for the Western Region of the Wirehouse Division of

---

[1]The facts are undisputed unless otherwise noted.

1   Travelers Life & Annuity ("Travelers"). His duties centered around
2   supervising Regional Vice Presidents and increasing "point-of-sale"
3   business in the western United States.

4       As of January 2004, the plaintiff's direct supervisor was Tom
5   Tooley, Senior Vice President of Marketing. Mr. Tooley reported
6   directly to Lou DiGiacomo, Vice President of Life Distributions,
7   who reported to Ed Cassidy, President of Travelers Life Division.

8       The plaintiff was given sales targets in 2004 and 2005, which
9   were calculated from the commissionable portions of the life
10  insurance premiums for products sold by the Regional Vice
11  Presidents who reported to him. In 2004 his sales target was $4
12  million and in 2005 it was $8-9 million. In 2005, the plaintiff
13  only reached $4.5 million of his sales target.

14      The plaintiff's compensation plan is one of the subjects of
15  dispute in this action. It is undisputed, however, that the
16  plaintiff's total annual compensation in 2004 and 2005 was
17  comprised of a base salary, a "discretionary bonus," and "monthly
18  variable compensation." The discretionary bonus was given to the
19  plaintiff out of a pool of funds, whose amount was unknown until
20  the end of the year and were typically not paid until March of the
21  following year. Mr. Cassidy had final approval of the amount of
22  discretionary bonuses to be paid to each employee. No other manager
23  had authority to promise an employee what the amount of his bonus
24  would be. The amount of the discretionary bonus was based on the
25  ////
26  ////

2

1  employee's overall job performance.[2]

2  In 2005, MetLife acquired Travelers. In February 2005, the

3  plaintiff received a memo from Michael Farrell, the Senior Vice

4  President of MetLife, which stated that employees who reached 90

5  percent of their sales targets would receive a "special sales

6  incentive" of between 10-20 percent of the employee's "total

7  monthly variable incentive compensation." The plaintiff understood

8  this to be a retention bonus. The memo stated that the bonus was

9  not available to managers who participated in a monthly variable

10 incentive program. Plaintiff asserts that Michael Farrell later

11 modified the terms of this bonus, informing plaintiff and others

12 that the special sale incentive would be 1 percent of actual

13 production if the sales targets were met. Statement of Disputed

14 Facts, ¶ 68.

15 The plaintiff was terminated on January 31, 2006. At that

16 time, he received as compensation for 2005 his base salary of

17 $75,000, monthly variable compensation of $100,000, and a retention

18 bonus of $10,000. In March 2006, MetLife paid the plaintiff a bonus

19 of $45,598.25.[3]

20 At the time of termination, the plaintiff was also paid for

21 thirteen unused vacation days. According to the plaintiff, he was

22

23 [2]The plaintiff disputes this, to the extent that it suggests
   that his overall compensation package would be less than $350,000

24 in 2005. Statement of Genuine Issues In Opposition to Motion for
   Summary Judgment, ¶ 33.

25 [3]The plaintiff disputes whether this bonus should be
   characterized as a "year-end bonus." Statement of Genuine Issues

26 In Opposition to Motion for Summary Judgment, ¶ 54.

1 owed payment for twenty unused vacation days. Statement of Genuine

2 Issues In Opposition to Motion for Summary Judgment, ¶ 56;

3 Statement of Disputed Facts, ¶¶ 66-67.

4   **II. STANDARD FOR SUMMARY JUDGMENT UNDER FED. R. CIV. P. 56**

5   Summary judgment is appropriate when it is demonstrated that

6 there exists no genuine issue as to any material fact, and that the

7 moving party is entitled to judgment as a matter of law.  Fed. R.

8 Civ. P. 56(c); <u>see also</u> <u>Adickes v. S.H. Kress & Co.</u>, 398 U.S. 144,

9 157 (1970); <u>Secor Ltd. v. Cetus Corp</u>., 51 F.3d 848, 853 (9th Cir.

10 1995).

11   Under summary judgment practice, the moving party

12   [A]lways bears the initial responsibility of informing
    the district court of the basis for its motion, and
13   identifying those portions of "the pleadings,
    depositions, answers to interrogatories, and admissions
14   on file, together with the affidavits, if any," which it
    believes demonstrate the absence of a genuine issue of
15   material fact.

16 <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 323 (1986).  "[W]here the

17 nonmoving party will bear the burden of proof at trial on a

18 dispositive issue, a summary judgment motion may properly be made

19 in reliance solely on the 'pleadings, depositions, answers to

20 interrogatories, and admissions on file.'"  <u>Id.</u>  Indeed, summary

21 judgment should be entered, after adequate time for discovery and

22 upon motion, against a party who fails to make a showing sufficient

23 to establish the existence of an element essential to that party's

24 case, and on which that party will bear the burden of proof at

25 trial.  <u>See id.</u> at 322.  "[A] complete failure of proof concerning

26 an essential element of the nonmoving party's case necessarily

4

1   renders all other facts immaterial." Id.  In such a circumstance,

2   summary judgment should be granted, "so long as whatever is before

3   the district court demonstrates that the standard for entry of

4   summary judgment, as set forth in Rule 56(c), is satisfied." Id.

5   at 323.

6        If the moving party meets its initial responsibility, the

7   burden then shifts to the opposing party to establish that a

8   genuine issue as to any material fact actually does exist.

9   Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574,

10  586 (1986); see also First Nat'l Bank of Ariz. v. Cities Serv. Co.,

11  391 U.S. 253, 288-89 (1968); Secor Ltd., 51 F.3d at 853.

12       In attempting to establish the existence of this factual

13  dispute, the opposing party may not rely upon the denials of its

14  pleadings, but is required to tender evidence of specific facts in

15  the form of affidavits, and/or admissible discovery material, in

16  support of its contention that the dispute exists.  Fed. R. Civ.

17  P. 56(e); Matsushita, 475 U.S. at 586 n.11; see also First Nat'l

18  Bank, 391 U.S. at 289; Rand v. Rowland, 154 F.3d 952, 954 (9th Cir.

19  1998).  The opposing party must demonstrate that the fact in

20  contention is material, i.e., a fact that might affect the outcome

21  of the suit under the governing law, Anderson v. Liberty Lobby,

22  Inc., 477 U.S. 242, 248 (1986); Owens v. Local No. 169, Ass'n of

23  Western Pulp and Paper Workers, 971 F.2d 347, 355 (9th Cir. 1992)

24  (quoting T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n,

25  809 F.2d 626, 630 (9th Cir. 1987)), and that the dispute is

26  genuine, i.e., the evidence is such that a reasonable jury could

                                  5

1  return a verdict for the nonmoving party, <u>Anderson</u>, 477 U.S. 248-

2  49; <u>see also</u> <u>Cline v. Indus. Maint. Eng'g & Contracting Co.</u>, 200

3  F.3d 1223, 1228 (9th Cir. 1999).

4      In the endeavor to establish the existence of a factual

5  dispute, the opposing party need not establish a material issue of

6  fact conclusively in its favor.  It is sufficient that "the claimed

7  factual dispute be shown to require a jury or judge to resolve the

8  parties' differing versions of the truth at trial."  <u>First Nat'l</u>

9  <u>Bank</u>, 391 U.S. at 290; <u>see also</u> <u>T.W. Elec. Serv.</u>, 809 F.2d at 631.

10 Thus, the "purpose of summary judgment is to 'pierce the pleadings

11 and to assess the proof in order to see whether there is a genuine

12 need for trial.'"  <u>Matsushita</u>, 475 U.S. at 587 (quoting Fed. R.

13 Civ. P. 56(e) advisory committee's note on 1963 amendments); <u>see</u>

14 <u>also</u> <u>Int'l Union of Bricklayers & Allied Craftsman Local Union No.</u>

15 <u>20 v. Martin Jaska, Inc.</u>, 752 F.2d 1401, 1405 (9th Cir. 1985).

16     In resolving the summary judgment motion, the court examines

17 the pleadings, depositions, answers to interrogatories, and

18 admissions on file, together with the affidavits, if any.  Rule

19 56(c); <u>see also</u> <u>In re Citric Acid Litigation</u>, 191 F.3d 1090, 1093

20 (9th Cir. 1999).  The evidence of the opposing party is to be

21 believed, <u>see</u> <u>Anderson</u>, 477 U.S. at 255, and all reasonable

22 inferences that may be drawn from the facts placed before the court

23 must be drawn in favor of the opposing party, <u>see</u> <u>Matsushita</u>, 475

24 U.S. at 587 (citing <u>United States v. Diebold, Inc.</u>, 369 U.S. 654,

25 655 (1962) (<u>per</u> <u>curiam</u>)); <u>See also</u> <u>Headwaters Forest Def. v. County</u>

26 <u>of Humboldt</u>, 211 F.3d 1121, 1132 (9th Cir. 2000).  Nevertheless,

1  inferences are not drawn out of the air, and it is the opposing

2  party's obligation to produce a factual predicate from which the

3  inference may be drawn.  See Richards v. Nielsen Freight Lines, 602

4  F. Supp. 1224, 1244-45 (E.D. Cal. 1985), aff'd, 810 F.2d 898, 902

5  (9th Cir. 1987).

6      Finally, to demonstrate a genuine issue, the opposing party

7  "must do more than simply show that there is some metaphysical

8  doubt as to the material facts. . . . Where the record taken as a

9  whole could not lead a rational trier of fact to find for the

10 nonmoving party, there is no 'genuine issue for trial.'"

11 Matsushita, 475 U.S. at 587 (citation omitted).

### III. ANALYSIS

13     The plaintiff has brought five causes of action, all of which

14 are premised on the allegations that he was not paid, at the time

15 of his termination, his full compensation for 2005 nor the value

16 of the unused vacation days he had accrued. For the reasons

17 provided herein, the court grants the defendant's motion in part.

18 **A.   Claims Related to Value of Plaintiff's 2005 Compensation**

19     As described above, the plaintiff's annual compensation was

20 comprised of three parts. First, he had a base salary of $75,000.

21 Second, he had a "monthly variable compensation." The plaintiff was

22 guaranteed that the monthly variable compensation would be at least

23 $100,000 per year, pro rated into monthly payments. Third, the

24 plaintiff's annual compensation also included a "discretionary

25 bonus," which all parties agree was based at least to some extent

26

1  on the plaintiff's performance.[4] In addition to these three
2  elements of his compensation, the plaintiff alleges that he was
3  also owed a "Special Sales Incentive," which he characterizes as
4  a retention bonus, pursuant to representations made by Michael
5  Farrell, the Senior Vice President of MetLife.

6      The parties do not dispute that the plaintiff was entitled to
7  and received his $75,000 base salary in 2005. They do not dispute
8  that he received $100,000 in "monthly variable compensation" that
9  year, as well. Finally, they do not dispute that he received
10  $45,598.25 in March 2006, although the parties do dispute whether
11  this was the discretionary bonus or the Special Sales Incentive /
12  retention bonus.

13      The plaintiff's position is that the defendant, through its
14  agents, promised that his total compensation was to be at least
15  $350,000, and his claims are premised on the fact that his
16  compensation fell short of this. He alleges that he was made to
17  believe that the three elements of his compensation package (base
18  salary, monthly variable compensation, and discretionary bonus)
19  would be at least $350,000 in 2005, and that it could be even more
20  than that based on the plaintiff's performance and the amount of
21  money available for bonuses at the end of the year. For this
22  reason, the plaintiff explains that he understood that the bonus

23  _____

24      [4]The plaintiff testified in his deposition that he conceived
   of his compensation structure as having two components: his base
   salary and his monthly variable compensation, and that the latter
25  was comprised of a fixed sum of $100,000 divided monthly plus a
   year-end bonus (the discretionary bonus). Deposition of Larry
26  Worman ("Worman Depo.") 66:1-67:7.

1   was only "discretionary" in the sense that it would be at least

2   $175,000 ($350,000 minus the $75,000 base salary minus the $100,000

3   monthly variable compensation) but that the defendants had

4   discretion to make the bonus even more than that amount.

5       The plaintiff has presented admissible evidence that he was

6   promised that his compensation would total at least $350,000,

7   meaning that his discretionary bonus would be at least $175,000.

8   The plaintiff testified that he was told by Tom Tooley and Lou

9   DiGaicomo that his total compensation would be a minimum of

10  $350,000 and that the year-end discretionary bonus would be

11  calculated to guarantee the plaintiff at least this amount. See,

12  e.g., Worman Depo. 58:6-15, 67:8-68:2, 72:14-73:3, 167:8-168:1. Tom

13  Tooley testified that when explaining to the plaintiff what his

14  compensation would be for 2005, the plaintiff was told "Here is

15  what we are going to get you this year," referring to the total of

16  $350,000. Deposition of Tom Tooley ("Tooley Depo.") 82:3-83:6. The

17  discretionary bonus would be used to ensure that the plaintiff's

18  total compensation reached $350,000. Id. at 85:20-23. If the

19  plaintiff exceeded his sales goals, however, he could have received

20  an even greater compensation. Id. at 86:2-7.

21      Additionally, the amount of the bonus is not so vague as to

22  be unenforceable as a term of the contract. See Rochlis v. Walt

23  Disney Co., 19 Cal. App. 4th 201 (1993). The plaintiff alleges that

24  by the terms of his contract, the bonus was to be at least $175,000

25  and that he therefore is entitled to this amount. This is a legally

26  viable position.

1    The plaintiff also has shown that a reasonable jury could find
2  that Travelers' agent or apparent agent assured him that his
3  compensation plan would be as he describes it in his complaint. A
4  plaintiff may recover against a principal for acts performed by the
5  principal's apparent agent only when the plaintiff's belief of that
6  person's agency was reasonable, due to some act or omission by the
7  principal, and when the plaintiff's belief was not negligent. Cal.
8  Civil Code § 2317; <u>Hill v. Citizens Nat. Trust & Savings Bank</u>, 9
9  Cal. 2d 172, 175-76 (1937). Here, the plaintiff does not dispute
10 that he did not know whether Mr. Tooley or Mr. DiGiacomo had the
11 authority to guarantee the amount of the discretionary bonus. <u>See</u>
12 Undisputed Facts ¶ 58. Notwithstanding this, the plaintiff also has
13 presented deposition testimony that other employees of Travelers
14 at MetLife, including Ed Cassidy, Mike Farrell, Andrew Aiello, and
15 Paul LaPiana, informed the plaintiff that they were aware of what
16 his compensation plan had been under Travelers and that he would
17 be paid in accordance with it in 2005. Worman Depo. 108:7-110:15,
18 111:18-112:4, 118:6-119:12, 124:16-125:1, 128:12-129:6, 131:12-
19 132:1, 143:7-143:17. Based on this, a jury could reasonably infer
20 that even if Mr. Tooley and Mr. DiGiacomo did not have authority
21 to make promises on Travelers' or MetLife's behalf, that they were
22 simply describing the details of the compensation plan that Mr.
23 Cassidy, Mr. Farrell, Mr. Aiello, and Mr. LaPiana had promised to
24 the plaintiff. A jury could also reasonably conclude that as the
25 President of Travelers Life Division, Senior Vice President of
26 MetLife, and MetLife managers, respectively, Mr. Cassidy, Mr.

1  Farrell, Mr. Aiello, or Mr. LaPiana had the authority or apparant

2  authority to take actions that would bind the principal, Travelers

3  and MetLife. <u>See</u> Cal. Civil Code § 2317; <u>Hill</u>, 9 Cal. 2d at 175-76.

4       Consequently, the court denies the defendants' motion for

5  summary judgment for the plaintiff's first, third, fourth, and

6  fifth causes of action insofar as they allege that the plaintiff

7  was entitled to but not paid the discretionary bonus of at least

8  $175,000.

9  **B.   Claims Related to the 2005 Special Sales Incentive /**

10      **Retention Bonus**

11      In his first cause of action, the plaintiff alleges that he

12 was not paid the retention bonus he was promised. He appears to

13 incorporate this allegation in his third and fifth causes of action

14 as well. In his opposition brief, however, the plaintiff concedes

15 that he was paid the retention bonus, in the amount of $45,598.65.

16 Therefore, the court grants the defendants' motion as to the

17 plaintiff's first, third, and fifth claims insofar as they allege

18 that he was not paid the retention bonus.

19 **C.   Claims Related to the Payment of Unused Vacation Time**

20      The plaintiff also brings his first, third, fourth, and fifth

21 causes of action premised on the allegation that he had accrued

22 twenty vacation days by the date of his termination, had used none,

23 and was only paid for thirteen. To support this allegation, the

24 plaintiff offers his deposition testimony that he felt he was

25 entitled to ten days per year of vacation time, and that he took

26 no vacation days in 2004 and 2005. Worman Depo. 181:8-182:1.

1   This suffice to show that there is a genuine issue of material

2   fact on this question. The plaintiff has presented admissible

3   evidence -- his testimony -- that he was not paid fully for the

4   vacation days he had accrued. Although the defendants offer

5   contrary evidence in the form of the testimony of James Boylan that

6   the plaintiff was only due payment for thirteen days, this does not

7   show that there is no genuine issue of material fact on this issue.

8   See Defendant's Separate Statement of Undisputed Facts, ¶¶ 55-57.

9   Put plainly, the plaintiff has presented evidence that would permit

10  a jury to find in his favor. This is all that is required. See

11  First Nat'l Bank, 391 U.S. at 290.

12      Accordingly, the court denies defendant's motion as to the

13  plaintiff's first, third, and fourth claims insofar as they allege

14  that the plaintiff was not paid the vacation time he was owed.[5]

15  **D.   Plaintiff's Second Cause of Action for Quantum Meruit**

16      In his second cause of action, the plaintiff alleges that he

17  was entitled to compensation for the reasonable value of the work

18  he performed for the defendant on the theory of quantum meruit.

19  Quantum meruit is a measure of recovery for one who has rendered

20  services to another, so that he may recover the reasonable value

21  of his services. Its purpose is to prevent unjust enrichment.

22  Palmer v. Gregg, 65 Cal. 2d 657, 660 (1967); Day v. Alta Bates

23  Medical Center, 98 Cal. App. 4th 243, 248 (2002). It is not a means

24  for recovery when a contract exists between the parties, as it

25  _____

26  [5]The court grants the defendant's motion as to the plaintiff's
    fifth cause of action in section V.E, *infra*.

12

1   cannot be a vehicle for changing or supplying terms of a contract.

2   Maglica v. Maglica, 66 Cal. App. 4th 442, 451 (1998); Hedging

3   Concepts, Inc. v. First Alliance Mortgage Co., 41 Cal. App. 4th

4   1410, 1419 (1996).

5        The plaintiff presents this cause of action in the

6   alternative, in the event that the factfinder determines that a

7   contract did not exist between the plaintiff and defendant. The

8   defendant, however, concedes the existence of a contract but only

9   disputes its terms. Consequently, this cause of action is not

10   viable as a matter of law. The court grants the defendant's motion

11   as to the plaintiff's second claim.

12   **E.   Plaintiff's Fifth Cause of Action Under California Labor Code**

13   **Section 203**

14        Under California Labor Code section 203, a plaintiff is

15   awarded an amount equal to his daily wages for up to thirty days

16   after his termination, if his employer had wilfully failed to pay

17   him his wages at the time of termination. Imposition of this

18   penalty is not proper if the employer's failure to pay wages was

19   not "willful," but was the consequence of a good faith dispute that

20   any wages were due. 8 Cal. Code Regs. § 13520.

21        Here the plaintiff has adduced no evidence that the defendant

22   withheld wages from him wilfully, within the meaning of section

23   203, or for any reason beyond a good faith dispute about the amount

24   of compensation that was due. For this reason, the defendant's

25   motion must be granted as to the plaintiff's fifth cause of action.

26   ////

**F.    Plaintiff's Claim for Punitive Damages**

The plaintiff concedes that punitive damages are not an available remedy for his causes of action. The defendant's motion is granted as to the plaintiff's claim for punitive damages.

**V. CONCLUSION**

As described herein, the defendant's motion for summary judgment is GRANTED IN PART and DENIED IN PART.

IT IS SO ORDERED.

DATED: January 28, 2008.


LAWRENCE K. KARLTON
SENIOR JUDGE
UNITED STATES DISTRICT COURT

14